**RAMSEY PRODUCTS CORPORATION, Appellee,**

v.

**MORBARK INDUSTRIES, INC., Appellant,**

and

**Michigan Transmission and Equipment Company, Appellee.**

No. 86–1509.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 9, 1986.

Decided July 17, 1987.

Donalt J. Eglinton (Leigh A. Allred and Thomas E. Harris, Ward and Smith, New Bern, N.C., on brief), for appellant.

William L. Rikard, Jr. and Jeffrey D. Smith (Huff, Kreis, Enderle, Callander & Hudgins, H.C. Strickland, and Parker, Poe, Thompson, Bernstein, Gage & Preston, Charlotte, N.C., on brief), for appellees.

Before HALL, SPROUSE and WILKINS, Circuit Judges.

SPROUSE, Circuit Judge:

Morbark Industries, Inc., appeals from the judgment against it in favor of Michigan Transmission and Equipment Company on a breach of contract claim. Morbark challenges the district court's exercise of personal jurisdiction over it and various rulings during the trial. Ramsey Corporation, a North Carolina corporation, initiated the breach of contract action against Michigan Transmission and Morbark, both Michigan corporations, in the United States District Court for the Western District of North Carolina. Morbark and Michigan Transmission moved for dismissal for lack of *in personam* jurisdiction, but the district court denied the motions. Michigan Transmission cross-claimed against Morbark for breach of contract and indemnification of any judgment in favor of Ramsey against it. Morbark cross-claimed against Michigan Transmission, asserting, *inter alia*, breach of express and implied warranties, and counterclaimed against Ramsey asserting, *inter alia*, breach of warranty. A jury found Morbark liable to Michigan Transmission and Michigan Transmission liable to Ramsey for breach of contract. We affirm.

## I.

Morbark manufactures and sells forestry equipment. Michigan Transmission distributes power transmission products and has sold equipment to Morbark since 1978. Ramsey manufactures and sells chain drives, devices consisting of a chain and two sprockets that transmit the rotational movements of a motor to the working parts of a machine.

Morbark introduced the Model 30 chiparvester, a machine that reduces whole trees to wood chips, at a trade show in the spring of 1983. At that time, the Model 30 was equipped with a V-belt drive system. After the trade show, however, Morbark decided to change the Model 30's drive system to a gear box. It contacted various gear box suppliers (including Michigan Transmission), provided the drive system specifications, and asked them to find an appropriate gear box for the Model 30. Michigan Transmission, in turn, contacted several gear box manufacturers and obtained proposals. Morbark, however, rejected all of the proposals because of cost.

Michigan Transmission then contacted Ramsey and gave it the drive system specifications for the Model 30. Ramsey determined that it had a chain drive that met the specifications, prepared a quotation, and discussed the quotation with Michigan Transmission. Ramsey warned Michigan Transmission, however, that it had little experience with this chain drive and no experience with wood chipper machines. Consequently, it advised Michigan Transmission that Morbark would have to test the chain drive in the Model 30 to determine if it was suitable.

Michigan Transmission discussed Ramsey's quotation with Morbark in June 1983. Michigan Transmission warned Morbark that the chain drive had never been used in a wood-chipper machine. After the discussion, Morbark decided to order two chain drives to test in the Model 30, even though it had no prior experience with chain drives, and Michigan Transmission relayed the order to Ramsey.[1]

---

1. The parties developed the following procedures for purchases of the chain drives: (1) Morbark ordered the chain drives from Michigan Transmission orally; (2) Michigan Transmission ordered from Ramsey; (3) Ramsey shipped the chain drives directly to Morbark; (4) Morbark paid Michigan Transmission; and (5) Michigan Transmission then paid Ramsey.

Later in June, Michigan Transmission called Ramsey to order more chain drives. Ramsey protested, explaining that they would not manufacture more chain drives until Morbark had tested the first two chain drives, and the initial two had not yet been shipped, much less tested. Michigan Transmission explained that Morbark was in a hurry and wanted to ensure it had a spot in Ramsey's production schedule, so production could begin immediately after the chain drives had been tested. Ramsey accepted the order, but refused to begin production until Morbark had tested and approved the chain drives. In mid-July, Michigan Transmission called Ramsey again and told it that Morbark had tested and approved the use of chain drives in the Model 30 and requested it begin production of the additional chain drives previously ordered.

In August, concerned that Morbark was proceeding too rapidly, Ramsey sent its chief engineer, Bill Hall, to Michigan to talk with Morbark. During this visit, Hall reiterated that Ramsey had no experience with wood-chipper machines, expressed concern over the adequacy of Morbark's testing, explained that without proper testing it was impossible to predict how long the chain drives would perform in the Model 30, and suggested certain design changes in the Model 30 to increase the life of the chain drive. Morbark elected not to make any changes in its design or testing process. Its chief engineer, Ivor Bateman, told Hall that "we know that we are the ones that are assuming the risks here."

In late August, Morbark informed Ramsey that a sprocket had broken on one of the chain drives. Ramsey acknowledged that the sprocket was defective and replaced it at no charge. Ramsey also redesigned one of the sprockets according to Morbark's instructions. During September-November 1983, Ramsey learned of three additional chain drive failures. Other than the initial sprocket defect, however, Morbark never told Ramsey that these additional failures resulted from Ramsey's errors. Ramsey did not hear of another chain drive failure until April 1984. Two months before, however, in February 1984,

Morbark ceased purchasing chain drives from Ramsey. It decided to install gear boxes in the Model 30 drive system because of the numerous problems it had experienced with the chain drives.

In May 1984, Ramsey demanded payment, of $50,000 that Michigan Transmission owed it on the chain drives that had been shipped to Morbark. At that time, Michigan Transmission had paid Ramsey $100,000, which was approximately $40,000 more than it had received from Morbark. Michigan Transmission informed Ramsey that it would not make any further payments until it received payment from Morbark. In addition, Michigan Transmission said it understood that Morbark would not pay until December 1984 and then only if the chain drives were working to Morbark's satisfaction. Ramsey responded that this arrangement was unacceptable and soon after filed suit against Michigan Transmission and Morbark to recover the unpaid purchase price of the chain drives.

Morbark and Michigan Transmission moved for dismissal for lack of *in personam* jurisdiction, but the district court denied the motions. Michigan Transmission cross-claimed against Morbark, seeking indemnification of any judgment against it and alleging breach of contract. Morbark counterclaimed against Ramsey and cross-claimed against Michigan Transmission, alleging breach of contract, breach of express warranty, breach of implied warranties of merchantability and fitness for a particular purpose, and negligence by each of them.

At the conclusion of all of the evidence, the district judge instructed the jury that in arriving at their verdict, they should answer the following five questions:

What amount, if any, is the Plaintiff [Ramsey] entitled to recover of the Defendant Michigan Transmission and Equipment? The second question: What amount, if any, is Defendant Michigan Transmission and Equipment entitled to recover of the Defendant Morbark for the purchase of the chain drives? The

third question: What amount, if any, is the Plaintiff entitled to recover of the Defendant Morbark Industries, Inc.? The fourth is: What amount, if any, is the Defendant Morbark entitled to recover of the Defendant Michigan Transmission as a refund of the purchase price because of breach of duty as agent with respect to this transaction? And the fifth is: What amount, if any, is the Defendant Morbark entitled to recover of the Plaintiff as a refund of purchase price because of defects, if any, in the chain drives?

After deliberation, the jury returned a verdict in favor of Ramsey against Michigan Transmission in the amount of $50,596.31 [2] and a judgment in favor of Michigan Transmission against Morbark for $88,065.95. Morbark appeals from this judgment, challenging the court's exercise of jurisdiction over it as well as various rulings it made.

## II.

■ Morbark argues that it did not have sufficient contacts with North Carolina to subject it to personal jurisdiction there.[3] The parties disagree on which test applies to evaluate whether Morbark's contacts satisfy the requirements of due process. Morbark argues that Ramsey's cause of action against it neither arose in North Carolina nor relates to its activities in the state. Consequently, Morbark contends that the appropriate standard for evaluating its contacts is the "continuous and systematic" test. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Wolf v. Richmond County Hospital Authority,* 745 F.2d 904, 909 (4th Cir.1984), *cert. denied,* 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985). Ramsey argues that its cause of action either arose in North Carolina or relates to Morbark's activities in the state. Consequently, it contends that it bears only the lesser burden of showing

that Morbark purposefully directed its activities toward the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

We agree with Ramsey that its cause of action relates to Morbark's activities in North Carolina. Our task, therefore, is to determine whether Morbark purposefully directed its activities at North Carolina. We conclude that it did. Morbark telephoned Ramsey on a number of occasions between August 1983 and May 1984 to request expedited service, to discuss modifications to the chain drives and other technical matters, and to arrange for a Ramsey employee to come to Morbark to observe the installation of a chain drive. Morbark also sent its truck to Ramsey's plant in North Carolina in December 1983 to transport a number of chain drives back to Michigan. Morbark wrote Ramsey directly to inform them that Morbark expected either help to resolve the problems or a full refund for return of the chain drives. Finally, Morbark returned chain drives from its headquarters in Michigan to Ramsey's plant in North Carolina. These are sufficient contacts to satisfy the requirements of due process. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

## III.

On appeal, Morbark argues that the trial court erred in refusing to submit eight claims it had to the jury: negligence, fraud, and breach of express warranty claims against Ramsey; and breach of express warranty, breach of implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability, constructive fraud, and innocent misrepresentation claims against Michigan Transmission. Morbark also contends that the trial court erred in excluding certain evi-

---

**2.** Michigan Transmission did not appeal this judgment nor the assertion of jurisdiction over it.

**3.** The parties agree that jurisdiction could properly be asserted under North Carolina's long-

arm statute. N.C.Gen.Stat. § 1–75.4. The only question, therefore, is whether the assertion of jurisdiction comports with the requirements of due process. *Dillon v. Numismatic Funding Corp.,* 291 N.C. 674, 231 S.E.2d 629 (1977).

dence and in its instructions to the jury. Finally, it argues that the trial judge was guilty of prejudice in conducting the trial.

We consider and affirm the trial court's exclusion of Morbark's claims against Michigan Transmission for breach of implied warranties both for fitness for a particular purpose and for merchantability. We consider and affirm the trial court's refusal to admit evidence of testing on a "one-half-inch pitch" chain drive because of its dissimilarity to the "one-inch pitch" chain drive involved in this case. We also consider Morbark's argument that the trial court erred in its instructions on agency, but do not find reversible error. We find no merit in Morbark's remaining contentions and do not discuss them separately.

■ Morbark contends the district court erred in failing to submit to the jury the questions of whether Michigan Transmission breached implied warranties of either fitness for a particular purpose or merchantability. Stated simply, Ramsey could not have been clearer in its cautions to Michigan Transmission that it had little experience with this particular chain drive and no experience in manufacturing chain drives for use in wood-chipping machines, and that Morbark must therefore test the prototype chain drives before Ramsey would produce additional chain drives. Michigan Transmission relayed these admonitions to Morbark with equal clarity. Morbark failed to present sufficient evidence to counter this evidence and to show it was relying on Michigan Transmission's expertise in choosing a suitable chain drive. Mich.Comp.Laws § 440.2315.[4] The trial court, therefore, correctly declined to submit the issue of breach of implied warranty of fitness for a particular purpose to the jury.

Michigan Transmission and Morbark dealt with each other continuously over a period of years. Trial testimony describing the history of that relationship reflects that Michigan Transmission regularly excluded any implied warranty of merchantability. Moreover, in the instant transaction, their "course of dealing" and "course of performance" clearly excluded any implied warranty of merchantability running from Michigan Transmission to Morbark. Mich. Comp.Laws § 440.2316. Michigan Transmission instructed Morbark to test the chain drives to determine if they were adequate for use in the chiparvesters. Morbark itself had a practice of dealing directly with Ramsey to modify the design of the drives or to correct any malfunctions. The chief engineer of Morbark indicated that he knew Morbark was accepting the risk that the chain drives would prove unsuitable. These actions were sufficient to negate any implied warranty of merchantability and the trial court correctly refused to submit this issue to the jury.

■ Morbark also contends that the district court erred in a number of its evidentiary rulings. Its only substantial contentions, however, concern the trial court's refusal to permit Morbark to introduce evidence that Ramsey tested a one-half-inch pitch[5] chain drive, as well as the results of the testing, which showed that the chain's connecting pins wore out too quickly under high stress. Ramsey objected to introduction of this evidence on relevancy grounds. It argued that the one-inch pitch chain drives actually used on the chiparvester were different from the one-half-inch pitch chain drives tested and that the testing conditions were unlike the conditions of use in the chiparvester. The test reports indicated that the one-half-inch chains were tested at $\frac{1}{13}$ of their tensile strength, which according to testimony was over twice the load that the Morbark chains were subjected to during use. Moreover, the person who conducted the tests testified that the one-inch and one-half-inch pitch chains were "two different chains."

**4.** Michigan law controls the contract between Michigan Transmission and Morbark, but in any event the relevant North Carolina commercial law is the same. *See* N.C.Gen.Stat. §§ 25–2–315, 25–2–316.

**5.** Pitch refers to the distance between the connecting pins in a link of the chain. A one-inch pitch link, therefore, is significantly larger than a one-half-inch pitch link.

The trial court agreed with Ramsey and ruled the evidence inadmissible because the chains possessed different characteristics and the circumstances of testing and actual use were too dissimilar. We agree. The relevance of experimental evidence depends on whether the testing was conducted under conditions "substantially similar" to those of actual use. *Renfro Hosiery Mills Co. v. National Cash Register Co.*, 552 F.2d 1061, 1065 (4th Cir.1977). The determination of relevancy is within the discretion of the trial judge. *Id.* at 1066. In view of the differences between the tested chain and the chain installed in the chiparvester, and between the conditions of the testing and the actual use in the chiparvester, the trial judge acted well within his discretion in excluding this evidence.

█ Finally, Morbark objects to the trial court's instructions on agency. In its general jury instructions, the court stated:

> There is evidence from which you can find that in these matters Michigan Transmission was acting as the agency authorized by Morbark to make this deal for Morbark, and if you find that to be the case, which the evidence tends to show, that Michigan was being the agent for Morbark and was doing in these particulars those things that Morbark authorized it to do and which by conduct Morbark ratified, then the actions of Michigan Transmission in the accomplishment of this contract with all its terms are the actions of Morbark.

In instructing the jury on Morbark's claim against Michigan Transmission for breach of duty as an agent, the court stated:

> Morbark says that in various ways Michigan breached its duty of agency to Morbark by not bearing the word directly back and forth, by not policing the job, by in various ways failing to do what Michigan was expected, as Morbark's representative, to do for Morbark, and you will remember the evidence on that subject which supports and the evidence which does not support the contentions on Morbark's part that Morbark should be entitled to get its money back because of the alleged breaches of duty by Michigan of its duty of agency to the defendant Morbark.

Morbark contends that the district court erred first by peremptorily instructing the jury that Michigan Transmission acted as Morbark's agent when the evidence did not establish that fact. *See Chisholm v. Hall*, 255 N.C. 374, 121 S.E.2d 726 (1961). Any error the district court may have committed in stating that the evidence tended to show that Michigan Transmission acted as Morbark's agent, however, was harmless. The jury refused any award against Morbark on Ramsey's claim against Morbark for breach of contract. It necessarily found, therefore, that Michigan Transmission was not acting as an agent for Morbark in making the contract.

█ Morbark also argues that the district court erred in its instructions on Morbark's breach of agency claim against Michigan Transmission by failing to instruct the jury on the elements of breach of agency. Morbark, however, failed to object at trial to the instructions on this ground. Fed.R.Civ.P. 51. It, therefore, is entitled to a new trial only if the given instruction amounts to plain error that substantially affects its rights. *Klein v. Sears Roebuck and Co.*, 773 F.2d 1421, 1426 (4th Cir.1985). Here, there is no plain error resulting in fundamental unfairness to Morbark. Indeed, the court's instructions on agency, "taken as a whole, fairly and adequately state the pertinent legal principles involved." *Hogg's Oyster Co., Inc. v. United States*, 676 F.2d 1015, 1019 (4th Cir.1982).

In view of the above, the judgment of the district court is affirmed.

AFFIRMED.