Edwin Lewis **FARBMAN**, Plaintiff,

v.

**ESSKAY MANUFACTURING
CO.**, Defendant.

No. C–C–87–346–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Nov. 24, 1987.

Bill G. Whittaker, Charlotte, N.C., for plaintiff.

Michael W. McCrum, Davis & Cedillo, Inc., San Antonio, Tex., for defendant.

## MEMORANDUM OF DECISION

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Defendant's Motion to dismiss or to change venue, and on Plaintiff's Motion to amend the complaint. Plaintiff brought suit in this Court, claiming that Defendant had breached an employment contract with Plaintiff. Defendant moved to dismiss the complaint for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2), or in the alternative to transfer the case to the Western District of Texas, 28 U.S.C. Sec. 1404(a). Plaintiff responded with his Motion to amend the complaint, contending that the amendments would make clear that the Court has jurisdiction over the Defendant. The Court finds it unnecessary to rule on Plaintiff's Motion, for it is evident that, even considering the allegations of the proposed amendments, the Defendant lacks the minimum contacts with the state of North Carolina necessary to vest personal jurisdiction in this Court.

Plaintiff, a North Carolina citizen, alleges in his complaint that Defendant is a Texas corporation having its principal place of business in Texas. Plaintiff claims that

Defendant "executed and delivered to Plaintiff an Agreement Letter," which became the contract forming the basis of Plaintiff's breach of contract action. This letter, attached as an exhibit to the complaint, was addressed to Plaintiff in North Carolina. It set out the terms of Plaintiff's employment as "Assistant to the [Defendant's] President." The letter bore the signature of Defendant's president, signing on behalf of the company. Below the signature appeared a space for Plaintiff to sign, indicating his approval and acceptance of the terms outlined in the letter. Plaintiff signed the acceptance, presumably while he was in North Carolina. The term of the employment was two years.

Plaintiff further alleges that his compensation included a sum for apartment and furniture rental, plus an air fare allowance. He claims that Defendant wrongfully terminated his contract after Plaintiff had worked for eight months.

The proposed amendments to the complaint include allegations that Defendant contacted Plaintiff at Plaintiff's home in North Carolina in response to Plaintiff's advertisement in a trade magazine, and that the Defendant suggested a meeting in New York. Plaintiff alleges that the said meeting was "satisfactory," and that Defendant again contacted Plaintiff in North Carolina and asked that Plaintiff come to Texas for a meeting. Plaintiff claims that Defendant reimbursed Plaintiff for the expense of travelling to the Texas meeting.

Plaintiff also alleges in his proposed amendments that the Defendant "has showrooms in many cities in the United States, including one in Charlotte, North Carolina." Indeed, the Defendant's letterhead (as it appears on the agreement letter sent to Plaintiff) includes a listing of its "showrooms" by city, and "Charlotte" appears on that listing, along with ten other locations scattered throughout the country.

Defendant filed affidavits in support of its Motion to dismiss asserting that its business, the manufacturing of clothing products, is conducted primarily in San Antonio, Texas, and that it has neither applied for nor received a certificate of authority to do business in North Carolina. Defendant denies having any employees, offices, banking accounts, or business facilities in North Carolina. The affiants further assert that the North Carolina showroom is owned by an independent contractor who is unrelated to Defendant except that it purchases items from Defendant. Defendant bears no part of the expense of the showroom.

Defendant's affiants contend that Plaintiff contacted Defendant about employment, and that no employee or agent of Defendant ever travelled to North Carolina to meet with Plaintiff about the employment contract. Affiants declare that Plaintiff lived and worked in San Antonio during his employment, and that all work performed under the contract was in San Antonio. Affiants also assert that all events relating to the termination of the contract occurred in Texas.

On a Fed.R.Civ.P. 12(b)(6) motion to dismiss for lack of personal jurisdiction, the burden is upon the plaintiff to show by a preponderance of the evidence that the court has personal jurisdiction over the defendant. *See Marshall Exports, Inc. v. Phillips*, 507 F.2d 47, 49 (4th Cir.1974) (in case decided before the North Carolina Supreme Court expanded reach of long-arm statute to full constitutional extent, court found that burden was upon plaintiff to prove that defendant came within terms of long-arm statute). The parties may submit affidavits to aid the court in its decision. *Bowman v. Curt C. Joa, Inc.*, 361 F.2d 706, 716–17 (4th Cir.1966).

Since this is a diversity action, jurisdiction of this Court follows the jurisdiction of the state courts, subject to the proviso that the minimum Constitutional requirements of jurisdiction must be met. *August v. HBA Life Insurance Co.*, 734 F.2d 168, 170 (4th Cir.1984); *Western Steer—Mom 'N' Pop's, Inc. v. FMT Investments, Inc.*, 578 F.Supp. 260, 264 (W.D.N.C.1984). The applicable North Carolina jurisdictional statute is N.C.Gen.Stat.Sec. 1–75.4(1)(d), which reads:

A court of this State having jurisdiction of the subject matter has jurisdiction

over a person served in an action pursuant to Rule 4(j) or Rule 4(j1) of the Rules of Civil Procedure under any of the following circumstances:

(1) Local Presence or Status.—In any action, whether the claim arises within or without this State, in which a claim is asserted against a party who when service of process is made upon such party:

.    .    .    .    .

d. Is engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise.

The North Carolina courts construe Section 1–75.4(1)(d) as conveying personal jurisdiction upon the courts to the full extent allowed by the due process clause of the United States Constitution. *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629 (1977). The Court's inquiry therefore centers around whether Defendant had the requisite minimum contacts with the state of North Carolina such that the exercise of personal jurisdiction over it by a court sitting in that state does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940).

■ The concept of "personal jurisdiction" is divided into two categories, general and special. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 nn. 8 & 9, 104 S.Ct. 1868, 1872 nn. 8 & 9, 80 L.Ed.2d 404 (1984). The exercise of "general jurisdiction" over a defendant contemplates "sufficient contacts" between the state and the defendant such that "due process is not offended" by the state's exercise of jurisdiction over the defendant on a cause of action unconnected with the forum. 466 U.S. at 414 & n. 9, 104 S.Ct. at 1872 n. 9. Where a "State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising 'specific jurisdiction' over the defendant." 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8. The Court will examine in turn the propriety of the exercise of each type of personal jurisdiction in the instant case.

## I. GENERAL JURISDICTION

■ "The amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case." *Perkins v. Benguet Mining Co.,* 342 U.S. 437, 445, 72 S.Ct. 413, 418, 96 L.Ed. 485 (1952). The contacts between Defendant and North Carolina may be summarized as follows:

(1) placing two telephone calls to a citizen and resident of the state, seeking to set up meetings in New York and Texas to discuss possibly employing the North Carolina citizen;

(2) entering into a contract, accepted in North Carolina, with a North Carolina citizen for that citizen's employment in Texas;

(3) selling and delivering its goods to a North Carolina entity which displays them in a showroom; and

(4) advertising on its letterhead that it has a North Carolina "showroom."

Clearly, these contacts are far less extensive than those involved in *Perkins,* where the defendant carried on "director's meetings, business correspondence, banking, stock transfers, payment of salaries, [and] purchasing of machinery" in the forum state. *Perkins,* 342 U.S. at 445, 72 S.Ct. at 418. Just as clearly, they are more extensive than the purchase of equipment from a manufacturer in the forum state that the Court in *Helicopteros* found insufficient. 466 U.S. at 418, 104 S.Ct. at 1874. This Court must decide just where on the spectrum between "continuous and systematic" contacts, *Perkins,* 342 U.S. at 437, 72 S.Ct. at 413, and insufficient forum activities Defendant's contacts lie.

First, the mere existence of a contract between Plaintiff, a North Carolina citizen, and Defendant is not enough to establish this Court's jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528. Further,

an assessment of the negotiations leading to the contract, and of the foreseeable consequences of the contract, *see id.* at 479, 105 S.Ct. at 2186, leads to the conclusion that the contract here cannot form the basis of general jurisdiction over Defendant. Plaintiff initiated the contract negotiations by advertising his availability in a trade magazine. Plaintiff thereby solicited offers of employment from all who the magazine might reach. The nature of the services contracted for is such that Plaintiff must have known from the outset that, if he accepted the job, he would be required to move to Texas. The parties carried on no contract negotiations in North Carolina, and Plaintiff has performed no services for Defendant in North Carolina. The contract created no long-term relationship between Defendant and North Carolina, *cf. Burger King Corp.*, except for the fortuitous circumstance that Plaintiff was a citizen of North Carolina when hired. This case is not analogous to those where, for example, a defendant, by contracting with a forum manufacturer, contemplates continuous interaction with an entity which will *remain* a resident of the forum state. *See, e.g., Burger King Corp.*, 471 U.S. 462, 105 S.Ct. 2174; *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950). If Plaintiff wished to work for Defendant, Plaintiff had to go to Texas.

The more troublesome contact is the presence of a "showroom" in the forum. When considering this fact, it is difficult to separate general jurisdiction from specific. The immediate reaction is that, since Defendant is selling its goods in the state, it ought to be subject to suit here. But it is evident that such conviction is justified only with respect to actions naturally arising out of the presence of Defendant's goods in the state; for instance, product liability suits, or actions on contracts concerning the goods. The contract sued upon, however, has nothing to do with the presence of Defendant's goods in the forum state.

This Court finds that the presence in this state of a showroom displaying Defendant's products is not sufficient contact with the forum to give the Court general juris-diction over Defendant. Defendant avers that it

> does not and has never maintained an office in Charlotte, North Carolina. An independent contractor, which sells certain items manufactured by ... [Defendant], maintains an office/showroom in Charlotte, North Carolina, however [sic] such independent contractor is not paid by ... [Defendant], is not controlled by ... [Defendant], and is not related to ... [Defendant] in any manner whatsoever other than through the purchase of certain items from ... [Defendant]. Such office/showroom is paid for and maintained by such independent contractor and ... [Defendant] does not reimburse or fund any expense related to the lease or maintenance of such showroom.

Defendant is not carrying on any regular and systematic business in North Carolina. To hold that the presence of Defendant's products in an independently owned showroom in the state subjects Defendant to the general jurisdiction of the state courts would be to erase the distinction between general and special jurisdiction. The fact that Defendant sells to an unrelated entity who regularly and systematically does business in North Carolina cannot, in all fairness, subject Defendant to the jurisdiction of courts in that state. It would be unreasonable to expect Defendant to recognize that its sale of goods to a North Carolina entity subjected it to lawsuits brought in that state on causes of action wholly unrelated to the goods. This Court does not have general jurisdiction over the Defendant.

## II. SPECIFIC JURISDICTION

Plaintiff's cause of action is on the contract for Plaintiff's services executed by and between Plaintiff and Defendant. As Justice Brennan noted in *Burger King Corp.*, "[t]he Court long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests, *International Shoe Co. v. Washington*, ... [326 U.S. 310], 319, 66 S.Ct. 154, 159–60, or on 'conceptualistic ... theories of the place of contracting or of performance,' *Hoopeston Canning Co.*

v. *Cullen,* ... [318 U.S. 313], 316 [63 S.Ct. 602, 604–05, 87 L.Ed. 777 (1943)]." 471 U.S. at 478–79, 105 S.Ct at 2186. The Court directed the inquiry toward the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479, 105 S.Ct. at 2186.

The contract here, as noted above in the discussion of general jurisdiction, had very little to do with the state of North Carolina. The negotiations for the contract were held in New York and Texas, and the contract was to be performed in Texas.

Defendant's other forum activity, the sale of its goods to a North Carolina entity, which displayed them in a showroom, are unrelated to the cause of action. Plaintiff does not allege, nor does the record imply, that he ever visited the showroom or even knew of its existence prior to his relationship with Defendant. The presence of Defendant's goods in the showroom cannot support specific jurisdiction over Defendant. This case is a far cry from *Ramsey Products Corp. v. Morbark Ind., Inc.,* 823 F.2d 798 (4th Cir.1987), where the defendant's activities effectively amounted to contracting with an in-state manufacturer for goods to be manufactured in the state.

### III. CONCLUSION

The Court is of the opinion that it does not have personal jurisdiction over Defendant. This action therefore will be dismissed. Judgment will be entered in accordance herewith.