James H. HERBERT, Plaintiff,

v.

**DIRECT WIRE AND CABLE, INC., et al., Defendants.**

**Civ. A. No. 88–0450–R.**

United States District Court, E.D. Virginia, Richmond Division.

Sept. 16, 1988.

Donald L. Creach, Hill Wellford, Patricia K. Epps, Hunton & Williams, Richmond, Va., for plaintiff.

Charles F. Witthoefft, Michael P. Falzone, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Va., for defendants.

MEMORANDUM

MERHIGE, District Judge.

Plaintiff originally filed a Motion for Judgment in the Circuit Court of the City

of Richmond and defendants successfully removed the action to this Court. The matter is now before the Court on defendants' motion to dismiss for lack of jurisdiction over the person, pursuant to Fed.R.Civ.P. 12(b)(2). The motion has been fully briefed and argued and is ripe for disposition. Jurisdiction is based on 28 U.S.C. §§ 1332 and 1441.

*Background*

Plaintiff, James H. Herbert, is a citizen of the Commonwealth of Virginia. Defendant, Direct Wire and Cable, Inc. ("Direct Wire") is a Pennsylvania corporation engaged in the distribution and sale of welding, power and pump cables and accessories. Its principal place of business is Denver, Pennsylvania. Direct Wire does not own or lease a facility in Virginia. Defendant, Carl A. Spicer, is a citizen of the Commonwealth of Pennsylvania and the president and chief executive officer of Direct Wire.

From July 26, 1982, until sometime in the spring of 1987, Herbert served as manufacturer's representative for Direct Wire in Virginia and four other states. Herbert's responsibility was to generate sales for Direct Wire. At all times during his employment, Herbert resided in Virginia. According to Mr. Spicer's affidavit, the vast majority of sales made by Direct Wire to Virginia customers were initiated by telephone calls from the customer to the company. A smaller percentage of sales were made by telephone calls from Herbert to Direct Wire. (Spicer affidavit at 2). During the course of Herbert's employment with Direct Wire, the company sold, and shipped to Virginia customers, products of a value in excess of $100,000 a year.

During his employment Herbert regularly received correspondence from Direct Wire at his Virginia address. Such correspondence included "copies of invoices, product information, price changes, sales and quota information, company policy bulletins, sales order confirmation, commission checks, correspondence regarding customer questions and complaints, and letters directed to [him] regarding the terms and conditions of [his] engagement with Direct Wire" (Herbert affidavit at 2). Herbert also received product samples at his Virginia address. Further, Herbert states that he received telephone calls in Virginia from Direct Wire and made telephone calls to Direct Wire from Virginia.

With respect to defendant Spicer, Herbert received at least three letters at his Virginia address that are central to the merits of his claim. He also states that he received numerous telephone calls from Spicer in Virginia. In addition, Herbert asserts that on several occasions Spicer came to Virginia, met and made sales calls with him. (Herbert affidavit at 2–3). Spicer's affidavit admits that he visited Virginia on approximately two occasions during the relevant time period. (Spicer affidavit at 3). There is no denial of Herbert's assertion that Spicer made sales calls with him. This fact, however, is not dispositive of the instant motion.

The present dispute arises out of the circumstances surrounding the termination of this business relationship. Herbert has asserted four causes of action against the defendants. The first is for breach of the employment contract whereby Herbert was to act as Direct Wire's sales representative. Plaintiff alleges that Direct Wire made a unilateral modification of his contract by letter, failed to pay him the correct amount of commissions and then wrongfully terminated his contract, also by letter. The second cause of action is for fraud. Plaintiff alleges that Spicer misrepresented to him the commission rate he was to receive and the sales for which he was to be credited. The third cause of action is for unlawful appropriation of plaintiff's name. Herbert charges that Spicer sent a letter to Herbert's customers in Virginia falsely stating that Herbert had retired. The fourth and last cause of action alleges tortious interference with business relationships and is based on the same letter.

*Discussion*

Historically, federal courts have engaged in a two-step analysis in determining whether the exercise of *in personam* jurisdiction is proper. The first step in that analysis is to determine whether the state's

194

long-arm statute provides authority for the assertion of jurisdiction, and the second is to determine whether the assertion of jurisdiction under the long-arm statute complies with the due process clause of the federal Constitution. *See, e.g., Blue Ridge Bank v. Veribanc, Inc.,* 755 F.2d 371, 373 (4th Cir.1985); *Brown v. American Broadcasting Co., Inc.,* 704 F.2d 1296, 1300 (4th Cir.1983). For a federal court sitting in Virginia, however, the two parts of this traditional analysis may collapse into one inquiry. The Virginia Supreme Court has held that the manifest "purpose of Virginia's long-arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the due process clause." *John G. Kolbe, Inc. v. Chromodern Chair Co.,* 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971). Some courts have interpreted this to mean that when personal jurisdiction is based on the "transacting any business" section of the Virginia long-arm statute, Va.Code § 8.01–328.1(1), only the due process issue need be addressed. *See, e.g., Bassett Furniture Industries, Inc. v. Sexton,* 596 F.Supp. 454 (W.D.Va. 1984). Because this case presents specific facts and issues not previously addressed in a published opinion, and because jurisdiction is based on both the "transacting business" section and the tortious injury provision of the Virginia long-arm statute, Va. Code § 8.01–328.1(4), this Court deems it appropriate to engage in the conventional two-part analysis. *See Blue Ridge Bank,* 755 F.2d at 373.

The Virginia long-arm statute provides in pertinent part:

801–328.1: A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

1. Transacting any business in this Commonwealth;

.   .   .   .   .

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct,

or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth;

. . . .

As is evident from the language of the statute, section 1 extends the Court's jurisdiction to a nonresident who transacts any business in Virginia so long as the cause of action asserted arises from the transaction of business. Section 4 of the long-arm statute has two requirements: the defendant must cause tortious injury in Virginia and the defendant's relationship with the Commonwealth must be characterized in one or more of the three ways specified in the section.

The plaintiff here asserts two causes of action that sound in contract: the first for breach of contract, and the second for fraudulent misrepresentations with respect to the terms of the contract. The Court is persuaded that both of these claims arise out of defendants' transaction of business in the Commonwealth within the meaning of the long-arm statute, and that therefore personal jurisdiction is properly asserted under section 1 of that statute (infra).

■ Defendants argue that no transactions with respect to the contract occurred in Virginia. They place heavy reliance on the fact that the contract was not signed in Virginia and cite *Luke v. Dalow,* 566 F.Supp. 1470, 1472 (E.D.Va.1983), for the proposition that under Virginia case law, an employment contract is business transacted where the contract is made. What defendants seem to ignore, however, is that the Virginia Supreme Court has never held that an employment contract is business transacted only where signed, and not also, as in the instant case, where performed, modified and terminated. In fact, under Virginia law, the occurrence of a single business transaction in state is sufficient to confer long-arm jurisdiction under section 1. *See, e.g., I.T. Sales, Inc. v. Dry,* 222 Va. 6, 278 S.E.2d 789 (1981); *Danville Plywood Corp. v. Plain and Fancy Kitchens, Inc.,* 218 Va. 533, 238 S.E.2d 800 (1977).

This Court finds the case of *Peanut Corp. of America v. Hollywood Brands,*

*Inc.,* 696 F.2d 311 (4th Cir.1982) both instructive and binding. In that case, a Virginia peanut supplier sued a nonresident buyer for breach of employment contract. The Fourth Circuit held that the "transacting business" section of the Virginia long-arm statute was satisfied where a letter purporting to modify the contract was mailed to the plaintiff in Virginia and telephone calls and other "written communiques" were made to and received in Virginia. *Id.* at 314.

Similarly, in this case plaintiff received at his Virginia mailing address Spicer's July 16, 1982 letter offering him a position as manufacturer's representative for Direct Wire, Spicer's February 16, 1987 letter purporting to change the terms of Herbert's sales commissions, and Spicer's March 16, 1987 letter purporting to terminate Herbert's employment with Direct Wire. In addition, Herbert regularly received his commission checks in Virginia and discussed the terms and conditions of his employment with Direct Wire by phone from Virginia. The Court finds that these exchanges constitute the transaction of business within the Commonwealth of Virginia. Because Herbert's first two causes of action arise as a direct result of these transactions, the full requirements of Virginia long-arm section 1 have been met.

■ Herbert's third and fourth causes of action sound in tort. Both arise as a result of letters defendant Spicer sent in March of 1987, to plaintiff's customers in Virginia and elsewhere. Plaintiff alleges that the letter falsely reported his retirement and thus unlawfuly appropriated his name and tortiously interfered with his business relationships. The court is persuaded that these claims fall within the reach of section 4 of the long-arm statute: Plaintiff alleges an injury suffered in Virginia as a result of an act committed in Pennsylvania, and the Court finds that defendants meet all three of the criteria listed in section 4, infra.

The writing and mailing of the letters in Pennsylvania and the alleged injury suffered in Virginia meet the first requirement of section 4. *See First American First, Inc. v. National Association of Bank Women,* 802 F.2d 1511, 1514 (4th Cir.1986) ("writing and mailing of ... letters out of state and the resulting alleged libel and other injuries suffered within Virginia clearly meet the first requirement [of section 4]"). Additionally, Direct Wire and Spicer "regularly do[ ] or solicit[ ] business in Virginia," they are engaged in a "persistent course of conduct" within Virginia and "derive substantial revenue" from goods sold to Virginia customers. *See Willis v. Semmes, Bowen & Semmes,* 441 F.Supp. 1235, 1241–42 (E.D.Va.1977). In fact, the record indicates that the defendants hired Mr. Herbert to establish a regular, continuous and profitable relationship within the Commonwealth of Virginia. During the plaintiff's tenure, defendants established an ongoing business presence and clientele in Virginia that resulted in sales in excess of $100,000 a year. Thus, the second requirement of section 4 is met and jurisdiction is properly asserted under the long-arm statute with respect to plaintiff's third and fourth causes of action.

Having determined that the Virginia long-arm statute authorizes the exercise of *in personam* jurisdiction over the defendants for all four causes of action, the Court must next determine whether such application of the statute comports with due process. As has been often stated, the due process clause limits the power of the state to exert personal jurisdiction over a nonresident defendant. *See, e.g., Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 108, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987). As elaborated by the United States Supreme Court, an assertion of jurisdiction is constitutionally permissible only when the nonresident defendant has established "minimum contacts" with the forum state so that requiring the defendant to appear and defend himself will not "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Further, as part of the minimum contacts analysis, "it is essential that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits

and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

Through their entire course of conduct in this matter, defendants directed their activities toward constructing and maintaining contacts with Virginia. The defendants' correspondence sent to the plaintiff in Virginia, the telephone call made to him in the state, and the commission checks received in Virginia are all illustrative of the defendants' understandable attempt to establish themselves as a commercial presence in Virginia. For seven years Herbert's job, as a representative of the company, was to solicit business throughout the state. It is hard to imagine a situation in which a defendant's actions could be more purposefully directed at availing itself of the privileges of conducting activities within the forum.

Defendants mistakenly suggest that *Farbman v. Esskay Mfg. Co.*, 676 F.Supp. 666 (W.D.N.C.1987) is dispositive on the issue of minimum contacts. In *Farbman*, the plaintiff, a resident of North Carolina, sued his employer, a Texas corporation, for breach of contract in a federal court in North Carolina. Although the plaintiff signed the employment contract in North Carolina, the plaintiff lived and worked in Texas during his employment and the contract was terminated there. The court dismissed the case for want of personal jurisdiction. Unlike the instant case, however, in *Farbman* the defendant was not licensed to do business in the forum, had no employees there and no employee or agent ever travelled to the forum. As the *Farbman* court stated, there was no relationship between the defendant and the forum "except for the fortuitous circumstance that plaintiff was a citizen of [the forum] when hired." In fact, the *Farbman* court specifically contrasted its case with the situation in which a defendant, like Direct Wire, hires someone in contemplation of "continuous interaction with an entity which will *remain* a resident of the forum state." *Id.* at 669 (emphasis in the original).

In conclusion, the Court finds that defendants "conduct and connection" with the Commonwealth are such that they "should reasonably anticipate being haled into court" in Virginia, *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), and thus requiring their presence in this case will offend neither traditional notions of fair play nor substantial justice.

For the reasons stated, the Court finds that the exercise of *in personam* jurisdiction over the defendants in this case is proper.

An appropriate Order shall issue.

### ORDER

For the reasons stated in the accompanying Memorandum, and deeming it just and proper so to do, it is ADJUDGED and ORDERED that defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(2) be, and the same hereby is DENIED.

Let the Clerk send copies of this Order and the Memorandum to all counsel of record.