PRECEPT MEDICAL PRODUCTS, INC., f/k/a WHITE KNIGHT HEALTHCARE, INC., Plaintiff,

v.

George KLUS, Defendant.

No. CIV.1:03 CV 11.

United States District Court,
W.D. North Carolina,
Asheville Division.

Sept. 19, 2003.

Frederick S. Barbour, McGuire, Wood & Bissette, P. A., Asheville, NC, for plaintiff.

Mark C. Kurdys, Roberts & Stevens, P.A., Asheville, NC, for defendant.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Defendant's timely filed objections to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Pursuant to standing orders of designation and 28 U.S.C. § 636, the undersigned referred the Defendant's motion to dismiss and alternative motion to change venue, filed March 7, 2003, to the Magistrate Judge for a recommendation as to disposition. Having conducted a *de*

*novo* review to those portions of the recommendation to which specific objections were filed, the undersigned denies the motion to dismiss or to transfer venue. 28 U.S.C. § 636(b); Fed.R.Civ.P. 72.

## I. STATEMENT OF FACTS

On July 23, 1999, the Plaintiff, Precept Medical Products, Inc.,[1] and the Defendant, George Klus, entered an agreement that called for the Defendant to serve as an independent sales representative for the Plaintiff, a company that sells medical supplies. Complaint ¶¶ 5, 7; Affidavit of George Klus, *attached to* Defendant's Motion to Dismiss and Alternative Motion to Change Venue ["Defendant's Motion"], filed March 7, 2003, ¶ 5. The Defendant's territory was to include Minnesota and parts of Iowa and Nebraska. *See* Exhibit A, *attached to* Klus Affidavit. One provision of the agreement was the Defendant would "not represent lines competitive to [the Plaintiff] so long as we are working together." *Id.* Although the agreement was to expire on January 31, 2000, unless extended by the Plaintiff, the Plaintiff alleges both parties operated under the agreement until November 2001. Complaint, ¶ 11.

The Plaintiff alleges that in August 2001, the Defendant violated the terms of the agreement and breached his fiduciary duty by "representing, selling, and otherwise offering lines competitive to plaintiff." Complaint, ¶¶ 15, 20. The Plaintiff also alleges the Defendant, who was an officer of AK Medical Corporation, a corporation that conducted business with the Plaintiff, converted over $90,000 of the Plaintiff's money by refusing to make payments that AK Medical owed to the Plaintiff. Com-

plaint ¶¶ 24, 26, 27. The Plaintiff further alleges that the Defendant committed constructive fraud and fraud by failing to act openly, honestly, and fairly with the Plaintiff and by making false statements concerning AK Medical's payments to the Plaintiff. Complaint ¶¶ 32, 35. Finally, the Plaintiff alleges that the acts mentioned above constitute unfair and deceptive trade practices under N.C. Gen.Stat. § 75–1.1 *et seq.* Complaint, ¶ 44.

Of particular relevance to this motion are the contacts the Defendant had with residents of North Carolina. The Plaintiff alleges the Defendant contacted the Plaintiff's North Carolina office to seek a position as sales representative. Affidavit of Thomas J. Kennelly, Jr., *attached to* Plaintiff's Response to Defendant's Motion to Dismiss ["Plaintiff's Response"], filed March 24, 2003, ¶ 6; Affidavit of Patsy J. Smith, *attached to* Plaintiff's Response, ¶ 7. Defendant claims the Plaintiff initiated the relationship. Klus Affidavit, ¶ 5. It is undisputed that the Defendant traveled to North Carolina to meet with the Plaintiff, although the parties dispute when the trip occurred. The Defendant claims the trip occurred before the parties entered into the agreement. *Id.* The Plaintiff claims the trip occurred in March of 2000. Kennelly Affidavit, ¶ 14; Affidavit of Charles K. Walker, *attached to* Plaintiff's Response, ¶ 14. The Plaintiff alleges that after the parties entered into the agreement, the Defendant frequently called and e-mailed the Plaintiff in North Carolina. Smith Affidavit, ¶¶ 10, 11; Walker Affidavit, ¶¶ 9, 10, 12, 13. The Plaintiff further alleges that the Defendant's checks from the Plaintiff were drawn on a North Car-

---

**1.** During all times relevant to this dispute, Plaintiff Precept Medical Products, Inc., was known as and conducted business as White Knight Healthcare, Inc. Because Precept Medical Products, Inc., is the successor to all rights and interests of White Knight Health-

care, Inc., the change of name did not alter the legal rights of the corporation for purposes of this litigation, and the Court will refer generally to the corporation as "the Plaintiff."

olina bank, and payments for the products sold by the Defendant were received in a lock box in North Carolina. Walker Affidavit, ¶¶ 15–16. Finally, Plaintiff alleges between January and May of 2001, the Defendant, through AK Medical, sold $26,244 worth of the Plaintiff's product to the VA Hospital in Durham, North Carolina. *Id.*, ¶ 17. The Defendant claims that during this time period he "continued to conduct all business activities as an individual ... or as an employee in Minneapolis." Defendant's Motion, ¶ 4. It is unclear from the Defendant's motion whether this statement is a denial that he made the alleged sales to the hospital in Durham.

## III. PROCEDURAL HISTORY

On January 10, 2003, the Plaintiff filed this action against George Klus for breach of contract, breach of fiduciary duty, conversion, constructive fraud, fraud, and unfair and deceptive trade practices. On March 7, 2003, the Defendant moved, under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), to dismiss the case for lack of personal jurisdiction and for improper venue or, in the alternative, to transfer venue to the District of Minnesota. On August 6, 2003, the Magistrate Judge issued a Memorandum and Recommendation that the Defendant's motions be denied. The Defendant filed timely objections to that Recommendation on August 18, 2003.

## IV. DISCUSSION

### A. Personal jurisdiction.

■ The first issue is whether the Court may take personal jurisdiction over the Defendant. For a federal district court to take personal jurisdiction over a non-resident defendant, two conditions must be met: (1) the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and (2) the exercise of jurisdiction must comport with

Fourteenth Amendment due process requirements. *Christian Science Bd. of Dir. of the First Church of Christ, Scientist v. Nolan,* 259 F.3d 209, 215 (4th Cir.2001). However, because the North Carolina long-arm statute has been construed to extend personal jurisdiction over non-resident defendants to the full extent permitted by the due process clause of the Constitution, the two inquiries collapse into a due process analysis. *Church v. Carter,* 94 N.C.App. 286, 289, 380 S.E.2d 167, 169 (1989).

■ Under due process jurisprudence, the requisite level of contact between the non-resident defendant and the forum state depends on whether or not the action at hand is based upon the defendant's contacts with the forum state. A court may assert specific jurisdiction, jurisdiction over cases involving the defendant's contacts with the forum state, "if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal citations omitted). For a court to assert general jurisdiction, jurisdiction over cases not concerning the defendant's contacts with the forum state, the defendant must have "systematic and continuous" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The plaintiff ultimately carries the burden of proving grounds for jurisdiction by a preponderance of the evidence; but when the Court must decide a pretrial motion for dismissal based on an alleged lack of personal jurisdiction, the Court must resolve all factual disputes in favor of the plaintiff. *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 59–60 (4th Cir.1993).

On the issue of specific jurisdiction, the first inquiry is whether the Defendant has purposefully directed his activities at residents of North Carolina. *Burger King, supra*. The Plaintiff alleges that the Defendant called the Plaintiff's office in Arden, North Carolina, to propose that he sell the Plaintiff's product, and that the Defendant made sales of a considerable volume in North Carolina. Smith Affidavit, ¶ 7; Walker Affidavit, ¶ 17. The Plaintiff further alleges the Defendant communicated extensively, at times more than once daily, through telephone or electronic mail with the Plaintiff in North Carolina regarding his selling the Plaintiff's products. Smith Affidavit, ¶¶ 5–6, 10–11; Walker Affidavit, ¶¶ 9–10. The Defendant also attended at least one meeting in North Carolina regarding his position as a sales representative of the Plaintiff. Kennelly Affidavit, ¶¶ 13–14; Walker Affidavit, ¶ 14; Klus Affidavit, ¶ 5. Furthermore, the Defendant submitted orders to the Plaintiff's offices in North Carolina and accepted commission checks from North Carolina. Smith Affidavit, ¶ 5; Walker Affidavit, ¶ 15. All of these alleged activities were voluntary on the part of the Defendant, and they can only lead to the conclusion that the Defendant purposefully directed his activities at residents of North Carolina.

It should be noted that the Defendant disputes many of the allegations mentioned above. For example, the Defendant claims that he never affirmatively reached out to North Carolina but, instead, the Plaintiff invited him to become a sales representative. Klus Affidavit, ¶ 5. Also, the Defendant claims that from July 23, 1999, through January 31, 2000, he conducted no business in and sold no products to North Carolina; and even after January 31, 2000, the Defendant conducted all business in Minneapolis. Defendant's Motion, ¶¶ 3, 4. Finally, by citing cases which hold that "isolated communications," "fleeting communication by telephone and fax," and "several telephone calls to North Carolina" are not sufficient contacts with North Carolina to establish specific jurisdiction, the Defendant implies that his communications with North Carolinians were more limited than the Plaintiff alleges. As stated earlier, for the purposes of a Rule 12(b)(2) motion, the Court will accept the Plaintiff's version of disputed facts. As such, the Court must assume that the Defendant's contacts with North Carolina were much more extensive and his activities more purposefully directed toward North Carolina than his motion claims.

The Defendant relies heavily on the case of *Farbman v. Esskay Mfg. Co.*, 676 F.Supp. 666 (W.D.N.C.1987), for the proposition that he did not purposefully direct his conduct toward North Carolinians. But the Defendant's reliance on this case is not persuasive after resolving factual disputes in the Plaintiff's favor. In *Farbman*, a North Carolina citizen and a Texas corporation negotiated an employment contract in Texas and New York. *Id.*, at 666, 670. The contract required the North Carolinian to move to Texas, and the contract contemplated no performance in North Carolina. *Id.*, at 669. By entering into the contract, the parties "created no long-term relationship between Defendant and North Carolina," and the court held that the contacts were not sufficient even to establish specific jurisdiction. *Id.*, at 669. However, on the facts alleged here and, to an extent, even on the facts as the Defendant has admitted, the contacts with North Carolina created by the present contract were much more continuous, extensive, and "long-term" than those created in *Farbman*. The *Farbman* court even went on to distinguish the case from one where the defendant "contemplates continuous interaction with an entity which will *remain* a resident of the forum state." *Id.* Here, the Plaintiff corporation intended to

remain a resident of North Carolina, and both parties must have contemplated "continuous interaction." As such, *Farbman* is distinguished and has little bearing on the present action.

Acknowledging that the Defendant disputes many of the Plaintiff's allegations regarding the nature of the Defendant's contacts with North Carolina, this Court simply holds that the facts, as the Plaintiff has alleged them, establish that the Defendant purposefully directed his conduct at North Carolina residents.

■ The next issue pertaining to specific jurisdiction is whether the Plaintiff's alleged injuries "arise out of or relate to" the Defendant's contacts with North Carolina. *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174. This inquiry is made more difficult because neither the Supreme Court nor any court in the Fourth Circuit has addressed the difference between contacts that actually give rise to the underlying injuries and those that merely relate to those injuries.[2] In this case, it is difficult to say that the Defendant's contacts with North Carolina "gave rise to" the alleged injuries. The Plaintiff does not indicate that the allegedly injurious actions, the marketing of competing goods, the withholding of payments, and the misrepresentations, were the same acts that connected the Defendant to North Carolina. For example, the Plaintiff has not alleged that the Defendant's trip to North Carolina was for the purpose of marketing competing goods or that his telephone calls were for the purpose of making misrepresentations. On the other hand, the allegedly injurious actions clearly do relate to the Defendant's contacts with North Carolina because the Defendant allegedly committed the injurious actions in his capacity as sales representative for the Plaintiff, the same capacity in which he established contacts with North Carolina.

Without deciding whether the Defendant's contacts with North Carolina actually gave rise to the alleged injuries, the Court finds that the Defendant is subject to the Court's specific jurisdiction. It was not by accident that the Supreme Court included the words "relate to" in its discussion of how connected a non-resident's contacts with the forum state must be to the injurious conduct for that state's courts to exercise personal jurisdiction. If those words are to be given any meaning at all, surely they enable North Carolina courts to exercise jurisdiction over this Defendant. The Defendant committed the allegedly injurious actions in his role as sales

---

**2.** In his dissenting opinion in *Helicopteros*, Justice Brennan urged the court to address whether the alleged injury must actually arise out of a defendant's contacts with the forum state for that state to take jurisdiction or whether the state may take jurisdiction when the injury simply relates to those contacts. 466 U.S. at 425, 104 S.Ct. 1868 (Brennan, J., dissenting). The Court refused to address the question, and Brennan argued that it is better policy for a court to be allowed to assert jurisdiction whenever the contacts with the forum state relate to the underlying injuries, even if the injuries do not actually arise out of the contacts. *Id.*, at 416 n. 10, 104 S.Ct. 1868; 427–28.

Since *Helicopteros*, the Supreme Court has never addressed the issue though many lower courts have and have resolved it in many different ways. *See e.g., Ex parte Kamilewicz*, 700 So.2d 340, 345 n. 2 (Ala.1997) (holding that the action does not have to arise out of the contacts but that there must at least be a "significant or direct relationship"); *Williams v. Lakeview Co.*, 199 Ariz. 1, 13 P.3d 280, 286 (2000) (indicating that the action must only be related to the defendant's contacts with the forum state as long as the relation is substantial); *Kervin v. Red River Ski Area, Inc.*, 711 F.Supp. 1383, 1389–90 (E.D.Tex.1989) (noting that *"[i]n personam* jurisprudence has taken a restrictive view of the relationship between causes of action and contacts, seemingly to require virtually a direct link between claim and contacts in order to pursue a specific jurisdiction analysis").

representative for the Plaintiff and/or as an officer of AK Medical, and it was in those same roles that the Defendant established contacts with North Carolina. Therefore, this is not a case where a defendant's injurious actions are tangentially related to his connections to the forum state. Here, the alleged actions over which the Plaintiff sues are so closely related to the Defendant's connections to North Carolina that this state most assuredly may exercise specific jurisdiction over this Defendant.

The Defendant argues his alleged contacts with North Carolina were not related to the lawsuit because the lawsuit "is premised entirely upon transactions between Plaintiff and AK Medical," and he established his contacts with North Carolina in his capacity as a sales representative for the Plaintiff, not as an officer of AK Medical. Defendant's Objection To Magistrate's Recommendation, filed August 18, 2003, at 1. But the lawsuit is not, as the Defendant claims, based entirely upon transactions between the Plaintiff and AK Medical. In fact, the Plaintiff's allegations of breach of contract and breach of fiduciary duty are based upon the contract that the Defendant admittedly signed in his individual capacity. Complaint, ¶ 13–21; Klus Affidavit, ¶ 5. Furthermore, the pleadings of neither party clearly explain which activities the Defendant conducted in his individual capacity and which he conducted as an officer of AK Medical. It *is* clear that the parties dispute when the agreement executed in the Defendant's individual capacity actually terminated. Complaint ¶ 11; Klus Affidavit, ¶ 6. Perhaps the parties should engage in further discovery as to which activities Klus conducted in each capacity, but at this point, the Court declines to base a decision on an issue where the facts have not been further developed.

Because the Defendant purposefully directed his conduct at North Carolina residents and because the Defendant's contacts with North Carolina were closely related to the allegedly injurious actions, the Defendant is subject to the specific personal jurisdiction of courts in North Carolina. Since the Defendant is subject to the specific personal jurisdiction of this Court, there is no need to consider whether the Defendant is subject to this Court's general personal jurisdiction.

## B. Propriety of venue

■ The next issue is whether venue is proper in the Western District of North Carolina. Under 28 U.S.C. § 1391(a)(2), a civil action founded on diversity of citizenship may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Therefore, the Court must determine whether a substantial part of the events or omissions giving rise to this claim occurred in the Western District of North Carolina.

■ Although the venue statute, unlike the jurisdictional standard, does not explicitly allow for venue to lie in a district where events merely relating to the claim occurred, it has been construed to allow venue in such districts. In other words, courts interpret § 1391 to allow venue in a district where acts or omissions closely related to the legal action occurred, even if none of those acts or omissions were the act or omission that allegedly caused the injury. For example, in *Ciena Corp. v. Jarrard*, 203 F.3d 312, 315–16 (4th Cir. 2000), the defendant, a California resident at the time of the suit, accepted employment in Missouri with a corporation whose principal place of business was in Maryland. When the corporation alleged that the defendant had violated her non-solicitation agreement through acts that she

performed outside of Maryland, the Fourth Circuit held that venue was proper in Maryland because the relationship between the corporation and the defendant, as well as many of the facts central to the case, was centered in Maryland. *Id.,* at 318. Therefore, although the specific acts that gave rise to the suit did not occur in Maryland, the court held that enough acts that were closely related to the case had occurred there for venue to be proper under § 1391(a)(2).

A court within this District made a similar ruling in *General Latex & Chem. Corp. (of N.C.) v. Phoenix Med. Tech., Inc.,* 765 F.Supp. 1246, 1251 (W.D.N.C.1991), when it held that a South Carolina corporation's failure to pay for goods shipped from western North Carolina established venue in the Western District of North Carolina even though the actual omission occurred in South Carolina. In that case, the Court relied partially on the fact that the defendant should have known that its failure to pay would cause an injury in western North Carolina. *Id. See also, Ellison Windows & Doors, Inc. v. Vinyl Products, Inc.,* 2000 WL 33389671 (M.D.N.C.2000); *Figgie Int'l, Inc. v. Destileria Serralles, Inc.,* 925 F.Supp. 411 (D.S.C.1996).

Given that the courts have applied § 1391(a)(2) as explained above, venue for this action lies in the Western District of North Carolina. As explained in the section of this order discussing personal jurisdiction, many acts very closely related to the current action occurred in the Western District of North Carolina. The Plaintiff has alleged that the Defendant initiated contact with residents of this District, visited this District, and frequently communicated with this District in the same capacity in which he injured the Plaintiff. Furthermore, the Defendant would easily have been able to foresee that his alleged actions would cause injury in this District. Therefore, venue is proper in the Western District of North Carolina.

## C. Transfer of venue

The final issue is whether, although venue does properly lie in this District, the Court should transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice" pursuant to 28 U.S.C. § 1404(a). Because venue is proper in this forum, the Court has "substantial discretion to decide Section 1404(a) transfer motions by weighing various judge-made factors, all of which have been developed to take account of 'the convenience of the parties and witnesses' or 'the interest of justice' or both." *Datasouth Computer Corp. v. Three Dimensional Techs., Inc.,* 719 F.Supp. 446, 450 (W.D.N.C.1989). Some of those factors include the plaintiff's choice of forum, the ease of access to sources of proof, the ability to compel witness attendance, the costs of witness attendance, and the enforceability of a judgment. *Id.,* at 450–51. In exercising its discretion, the Court should keep in mind that the plaintiff's choice of forum carries significant weight and that a transfer of venue is not appropriate if the transfer merely shifts the burdens of litigation from one party to another. *Ellison Windows, supra,* at *7.

In the present case, the Defendant has asked the Court to transfer venue but has given no reason why the Court should do so. The Defendant has not, for example, claimed that he will not be able to have witnesses attend a trial in North Carolina, nor has he claimed that he will not have access to the necessary sources of proof if the trial is held in North Carolina. Clearly, a trial in Minnesota would be more convenient for the Defendant, but such a transfer would merely shift the inconvenience from the Defendant to the Plaintiff. For these reasons, the Court

exercises its discretion and declines to transfer venue.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's motion to dismiss and alternative motion to change venue is hereby **DENIED.**