Bernice C. CARTER, Plaintiff,

v.

TRAFALGAR TOURS LTD., Defendant.

Civ. A. No. 88–0123–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

Jan. 19, 1989.

Alton B. Prillaman, Jolly, Place, Fralin & Prillaman, P.C., Roanoke, Va., for plaintiff.

William B. Poff, W. Fain Rutherford, Woods, Rogers & Hazlegrove, Thomas B. Dickerson, Jolly, Place, Fralin & Prillaman, P.C., Roanoke, Va., for defendant.

MEMORANDUM OPINION

TURK, Chief Judge.

Defendant has moved the court to dismiss this diversity tort action arising out of events alleged to have occurred in Austria. Defendant asserts that the court lacks personal jurisdiction over defendant and that in any case the action should be dismissed on grounds of *forum non conveniens.* The court finds that this court has personal jurisdiction over defendant as to plaintiff's claim and that venue is proper in this court. The court therefore denies defendant's motion.

The court assumes that the allegations in plaintiff's complaint, which plaintiff filed in March, 1988, are true for purposes of this motion. Defendant Trafalgar Tours Ltd., a British corporation, arranges bus tours of Europe and Britain. Defendant does business in the United States as Trafalgar Tours U.S.A., Inc., a New York corporation with an office in New York City.[1] From

---

1. In her complaint, plaintiff does not spell out the relationship between Trafalgar Tours Ltd., which she has named as the sole defendant to her action, and Trafalgar Tours U.S.A., Inc. She states simply that Trafalgar Tours Ltd., a British corporation, "does business in the United States

this New York office, defendant advertises and sells its services through various travel agencies in Virginia and elsewhere around the country. Plaintiff, a citizen and resident of Virginia, and her husband, Robert Carter, contracted in February, 1986, through the American Automobile Association office in Roanoke, Virginia, to participate later that year in a bus tour of Europe organized by defendant. The Carters were on the tour on September 2, 1986, when the bus in which they were riding collided with a dump truck near Leoben, Austria. Plaintiff sustained serious injuries in the accident, breaking five ribs, a leg and a wrist, as well as suffering a punctured lung, a concussion and blood clots. The driver of the bus, who was an agent or employee of defendant and subject to defendant's exclusive control, had been driving ineptly and carelessly at the time of the accident and for several days previously. Plaintiff and other tour participants had complained about the driver's conduct to the tour director, an agent of defendant who accompanied the tour, but the complaints "went unheeded."

The parties' diverse citizenship gives this court subject matter jurisdiction under 28 U.S.C. § 1332 (1982).

### Personal Jurisdiction

In support of its motion, defendant adduces affidavits of its managing director, Michael A. Ness, and of Cynthia Hassell, the AAA travel agent who arranged plaintiff's participation in defendant's tour. Mr. Ness states that defendant, a company registered in the United Kingdom with its principal place of business in London, markets seats on bus tours of Europe and Britain in the United States through Trafalgar Tours U.S.A., Inc., a New York corporation licensed to do business only in that state. Defendant mails advertising brochures each year from New York to travel agencies around the country. The company does not direct or control the activities of travel agents who receive its brochures. Persons who wish to participate in defendant's tours make payment to a travel agency, which in turn pays defendant. Defendant's personnel have no direct contact with tour participants until they arrive in Europe. Defendant is not licensed to do business in Virginia and has no place of business, other property or employees working in the Commonwealth.

Ms. Hassell states that in February, 1986, she arranged for the Carters to participate in a bus tour organized by defendant that began in August, 1986. She did so by ascertaining from defendant's New York office that seats on the tour were available for the Carters. The Carters paid AAA a deposit for the tour in February, and AAA then transmitted the same amount of money to defendant's New York office out of AAA's own funds.

In ruling on a motion to dismiss for lack of subject matter jurisdiction made pursuant to Fed.R.Civ.P. 12(b)(1), a trial court "may consider evidence by affidavit, deposition or live testimony without converting the proceeding to one for summary judgment," as provided in Fed.R.Civ.P. 12(c). *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). The same is true of a motion to dismiss for want of personal jurisdiction made pursuant to Fed.R.Civ.P. 12(b)(2). *See Marine Midland Bank v. Miller*, 664 F.2d 899, 904 (2d Cir.1981); *Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d 56, 58–59 (2d Cir.1981). Plaintiff bears the burden of establishing jurisdiction. At the dismissal stage, the trial court weighs the evidence to determine whether the court has jurisdiction to hear the plaintiff's claim.[2] *Adams, supra,*

through Trafalgar Tours, Inc." The British company's managing director states on affidavit that Trafalgar Tours U.S.A., Inc., is a "separate company" licensed in New York. Defendant does not argue, however, that the actions of the New York company should not be imputed to the British company, and for purposes of this motion the court will treat the two companies as a single entity and will refer to them collectively as "defendant."

2. If "the jurisdictional facts are intertwined with the facts central to the merits of the dispute, ... the entire factual dispute is appropriately resolved only by a proceeding on the merits." *Adams, supra,* at 1219. The jurisdictional facts of this case, which involve defendant's business contacts with Virginia, are generally distinct

697 F.2d at 1219. The facts asserted in the two affidavits defendant has adduced, as summarized above, are not contradicted by the complaint or by any other evidence plaintiff has offered, and the court will assume that they are true for purposes of this motion.

Virginia law, subject to due process constraints, governs the extent of this court's personal jurisdiction in a diversity suit. The court must determine whether Virginia has given its courts statutory authority to hear this claim and, if so, whether "the exercise of jurisdiction complies with federal constitutional standards of due process." *Blue Ridge Bank v. Veribanc, Inc.,* 755 F.2d 371, 373 (4th Cir.1985).

### (a) Statutory Authority

■ Virginia's long arm statute provides, in pertinent part, that the state's courts "may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's ... [t]ransacting any business in this Commonwealth." *Va. Code Ann.* § 8.01–328.1(A)(1) (Supp.1988). This jurisdictional grant is limited to the extent that "[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." *Va. Code Ann.* § 8.01–328.1(B) (Supp.1988).

The Supreme Court of Virginia has stated that the provision's purpose is "to assert jurisdiction over nonresidents to the extent permissible under the due process clause." *John G. Kolbe, Inc. v. Chromodern Chair Co.,* 211 Va. 736, 180 S.E.2d 664, 667 (1971). The provision is a "single act statute" that requires "only one transaction in Virginia to confer jurisdiction on its courts." *Id.; I.T. Sales, Inc. v. Dry,* 222 Va. 6, 278 S.E.2d 789, 791 (1981) (defendant's entry into single employment contract in Virginia sufficed to give its courts jurisdiction over him in a dispute over the contract that arose after he had moved to California). The defendant need only "engage in some purposeful activity in Virginia." *Danville*

*Plywood Corp. v. Plain and Fancy Kitchens, Inc.,* 218 Va. 533, 238 S.E.2d 800, 802 (1977) (per curiam).

In *John G. Kolbe, Inc., supra,* the Virginia Supreme Court held that Virginia's courts had jurisdiction over a California manufacturer of chairs and tables in a dispute over an order a Virginia furniture dealer had placed with the manufacturer's representative when the representative called on the dealer at the dealer's premises in Richmond. When the defendant's representative called on the dealer and took its order, the court ruled, the defendant "voluntarily and purposefully availed itself of the privilege of conducting business activities within Virginia which amounted to substantial transaction of business in this state." 180 S.E.2d at 668. By soliciting this order and others like it, the defendant had embarked on "a pattern of activities intended to develop [its] market in Virginia and to reap the economic benefits therefrom." *Id.*

Unlike the defendant in *John G. Kolbe, Inc., supra,* defendant here has not, according to the record, had a representative in Virginia who has solicited business. Defendant has, however, solicited business from the public by advertising its services through travel agencies in the state. By sending marketing brochures to travel agencies for the perusal of the public, defendant doubtless intended to develop its market in Virginia and to reap the resulting economic benefits. Moreover, the Supreme Court's opinion in *John G. Kolbe, Inc.,* indicates that having a representative in the state is not a necessary predicate to jurisdiction in all cases. In assessing the reach of Virginia's long arm statute, the court relied heavily on the U.S. Supreme Court's decision in *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). *See* 180 S.E.2d at 666–67. In *McGee,* the Supreme Court upheld California's assertion of jurisdiction over a Texas life insurance company as to a policy on the life of a California resident. The company

from the facts central to the merits of the dispute, which involve a traffic accident in Austria. It is therefore appropriate for the court to rule

on defendant's jurisdictional objection prior to trial of this case on the merits.

had accepted the obligations of another insurance company, from whom the Californian initially had purchased his policy. The defendant had written to the man offering to renew his policy, and the man had accepted.

The Supreme Court upheld California's jurisdiction over the Texas company even though it had never had an office or an agent in California, and there was no evidence in the record that it had ever done any other business there. "It is sufficient for our purposes," the court concluded, "that the suit was based on a contract which had substantial connection with [California]." *Id.* 355 U.S. at 223, 78 S.Ct. at 201. The Carters' contract with defendant similarly has a substantial connection with Virginia. Defendant purposefully advertised its services in Virginia, and its advertising reached plaintiff there. The Carters are Virginia residents, and they contracted to participate in defendant's tour while in Virginia. Furthermore, the fact that plaintiff has not established any other transactions between defendant and Virginians does not defeat jurisdiction. As noted above, the Virginia Supreme Court has characterized the long arm provision as a single act statute. In addition, a single contract sufficed to give California jurisdiction over the Texas insurer in *McGee.*

The court concludes that defendant's direct advertising of its services in Virginia and its consequent entry into a contract either with a Virginia travel agency or with two Virginia residents constituted "a purposeful activity in Virginia." *See Danville Plywood Corp., supra,* 238 S.E.2d at 802. Defendant's acts thus rose to the level of "transacting any business" in Virginia and sufficed to sustain jurisdiction in this court under § 8.01–328.1(A)(1). By entering into a contract with a resident of, or a business located in, Virginia, defendant availed itself of the privilege of conducting business in Virginia and of the protection of that state's laws. Had defendant sought to assert its rights under the contract against either plaintiff or AAA, defendant could expect Virginia's courts to hear its claims, once it had complied with statutory certification requirements.[3] Moreover, jurisdiction is proper pursuant to Virginia's long arm statute because, as noted above, the provision is "designed to assert jurisdiction over nonresidents to the extent permissible under the due process clause." *John G. Kolbe, Inc., supra,* 180 S.E.2d at 667. The court will explain below why its exercise of jurisdiction comports with due process.

Virginia's long arm statute is limited by its second subsection, *Va.Code Ann.* § 8.01–328.1(B), which provides that jurisdiction predicated on a defendant's having transacted business in Virginia is limited to claims arising from the defendant's having transacted such business. This limiting provision does not restrict the court from exercising jurisdiction in this case, however, because plaintiff's claim arose from her participation in defendant's tour, participation which occurred because defendant transacted business in Virginia.

Defendant emphatically asserts that it did not transact business directly with plaintiff but did so through the intermediary offices of AAA.[4] However this may be, defendant advertised its services to Virginia travel agencies and through them to Virginia residents. Plaintiff responded to defendant's promotional efforts. Moreover, so far as the record indicates, AAA's Roanoke office is a Virginia business. For purposes of jurisdiction over defendant, therefore, it makes little difference whether defendant entered into a contract with plaintiff or with AAA. In either case, de-

---

**3.** *See Va.Code Ann.* § 13.1–758 (Supp.1988).

**4.** Defendant appears to base this argument on the language of Virginia's long arm statute, which applies to a person who transacts any business in Virginia directly or through an agent. Defendant appears to interpret the statutory language to mean that Virginia's courts have statutory authority to exercise jurisdiction over a defendant only if the defendant or its employee or agent actually sets foot in Virginia. The Virginia Supreme Court's use of *McGee* as a basis for construing the statute, however, belies this contention. A defendant located in another state can transact business in Virginia by mail or telephone. Advertising reasonably calculated to reach the state also is relevant. Defendant through its New York office transacted business in Virginia, whether or not AAA is its agent.

fendant entered into a contract with a resident of, or an entity located in, Virginia who was in Virginia when the contract was executed, a contract that defendant through its advertising to the public in Virginia had solicited.

### (b) Due Process

■ Exercise of jurisdiction over defendant comports with due process because defendant's contract with plaintiff "had substantial connection with" Virginia. *McGee, supra,* 355 U.S. at 223, 78 S.Ct. at 201. As noted above, defendant purposefully advertised its services to the public in Virginia, in accordance with that advertising, entered into a contract with a resident of, or a business located in, Virginia, to provide services to Virginians, the Carters. The Supreme Court has noted that increased nationalization of commerce has led the courts to expand "the permissible scope of state jurisdiction over foreign corporations and other nonresidents." *Id.* at 222, 78 S.Ct. at 200–01. "Today many commercial transactions touch two or more States and may involve parties separated by the full continent," the court observed. "With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines." *Id.* at 222–23, 78 S.Ct. at 200–01. The same can be said of business conducted by telephone.

The expansion of state jurisdiction does not threaten litigants' due process rights, the court added, because individuals and corporations are better able to make themselves heard in a distant forum than in years past. "[M]odern transportation and communications have made it much less burdensome for a party sued to defend himself in a state where he engages in economic activity." *Id.* at 223, 78 S.Ct. at 201.

Virginia's strong interest in having its courts able to exercise jurisdiction militates in favor of the conclusion that jurisdiction comports with due process. *See Keeton v. Hustler Magazine,* 465 U.S. 770, 776, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984). When foreign corporations advertise their services within Virginia to its citizens and

then contract with Virginians who are in the state to provide such services to Virginians, Virginia has a significant interest in having its courts able to provide a forum for disputes that arise over defendant's provision of services pursuant to those contracts, whether or not the services are actually rendered in the state.

As the Supreme Court recognized in *McGee,* the absence of evidence that defendant's employees or agents set foot in Virginia or that defendant transacted any business with Virginians other than that undertaken with the Carters does not render exercise of jurisdiction violative of due process. Rather, it is more "critical" that defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). "[I]f the sale of a product of a manufacturer or distributor such as Audi or Volkswagon is not simply an isolated occurrence, but arises from the efforts of the manufacturer to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those states if its allegedly defective merchandise has there been the source of injury to its owner or to others." *Id.*

This case, of course, does not involve the sale of goods which are alleged to be defective but defendant's provision of services in an assertedly tortious manner. Nevertheless, defendant here endeavored to serve the market in Virginia for its services. Its entry into the contract here in dispute reflected a purposeful marketing program in the state and cannot be characterized as an "isolated occurrence." Defendant's subjection to suit in Virginia is therefore reasonable.

The contrast between the facts of this case and others in which the Supreme Court has found that exercise of jurisdiction did not comport with due process also indicates that jurisdiction is proper in this court. *World–Wide Volkswagon, supra,* involved Oklahoma's assertion of jurisdiction over two New York corporations, an

auto dealer and its distributor. The dealer had sold New York residents a car, obtained from the distributor, that was in a collision in Oklahoma. In finding that exercise of jurisdiction denied due process to the two defendants, the court noted, among other factors, that the two defendants

> avail themselves of none of the benefits of Oklahoma law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they ... serve or seek to serve the Oklahoma market.

*Id.* at 295, 100 S.Ct. at 566.

Defendant here engages in many of the activities of which the Supreme Court found a conspicuous absence by the defendants in *World–Wide Volkswagon.* In entering into a contract with the Carters through AAA, defendant took advantage of its right to have Virginia's courts adjudicate any disputes that might have arisen over the contract and to enforce its rights under it against either the Carters or AAA. By mailing promotional literature to Virginia travel agencies, defendant also has solicited business from Virginians through advertising reasonably calculated to reach Virginia. By the same token, defendant has served and has sought to serve the market for its services in Virginia.

The facts of *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), another case in which the court found that exercise of jurisdiction would not comport with due process, also are sufficiently distinguishable from those at bar to support the conclusion that jurisdiction is proper here. The court there found that Florida courts lacked jurisdiction over a Delaware trust company that had contracted to act as trustee for a settlor who lived in Delaware at the time. The parties to the agreement at the time they entered into it were thus a Delaware company and a Delaware resident. The court noted that whereas the insurance company named as defendant in *McGee* had written to a Californian to solicit his renewal of an insurance policy, the defendant trust company in *Hanson* had not "performed any acts in

Florida that bear the same relationship to the agreement as the solicitation in *McGee.*" 357 U.S. at 252, 78 S.Ct. at 1239. Nor does the court's opinion indicate that the trust company had advertised in a way reasonably calculated to reach Floridians or had solicited their business in any other way. *Hanson* thus differs from this case in that the defendant there did not advertise or solicit business from the public in the state that asserted jurisdiction, nor did that defendant enter into a contract with a resident of, or with an entity located in, that state. These are precisely the circumstances on which this court predicates its conclusion that exercise of jurisdiction in this case comports with due process.

### Forum Non Conveniens

■ Defendant argues that an Austrian court would offer a more appropriate forum for plaintiff's action than this court because the accident in which plaintiff alleges she was injured occurred in Austria. Authorities there investigated the collision, and Austrian medical personnel treated her. Defendant states that it may want to implead as co-defendants the driver of the bus whom plaintiff contends was negligent, the bus company that employed him and perhaps the driver or owner of the other vehicle involved in the accident.

Whether to dismiss an action for *forum non conveniens* "is committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981). *See also Hodson v. A.H. Robbins, Co.,* 715 F.2d 142 (4th Cir.1983). The courts developed the principle of *forum non conveniens* in order to prevent a plaintiff from misusing venue by forcing trial "at a most inconvenient place for an adversary, even at some inconvenience to himself." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). Dismissal for *forum non conveniens* should be granted reluctantly, as "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum." *Piper Aircraft, supra,* 454 U.S. at 255, 102 S.Ct. at 265. This presumption is especially strong where, as in this case, plaintiff is a U.S.

resident or citizen who has chosen his home forum for adjudication. *Id.* at 255–56, 102 S.Ct. at 265–66; *Koster v. Lumbermens Mutual Casulty Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 831–32, 91 L.Ed. 1067 (1947).

Dismissal on grounds of *forum non conveniens* should be made only on a showing that a "specific, adequate and available alternative forum" exists. *Kontoulas v. A.H. Robins Co.,* 745 F.2d 312, 315 (4th Cir.1984). A plaintiff

should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems. In any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown.

*Koster, supra,* 330 U.S. at 524, 67 S.Ct. at 831–32.

The presumption in favor of plaintiff's bringing suit at home did not apply with full force in *Koster,* which involved an insurance policyholder's derivative action rather than a suit an individual plaintiff had brought at home, 330 U.S. at 524–25, 67 S.Ct. at 831–32, or in *Piper Aircraft, supra,* where the plaintiff, the representative of the estates of some Scottish citizens, was foreign. *Piper Aircraft,* 454 U.S. at 256, 102 S.Ct. at 266. In this case, however, plaintiff is a citizen of Virginia who resides in Roanoke and has brought an individual action in the Division of this District nearest her home. There certainly is no suggestion that plaintiff brings her action in this Division in order to harass or inconvenience defendant or for any reason other than her own convenience. Plaintiff's interest in having her suit tried in her home forum therefore will outweigh the inconvenience to defendant of having this case adjudicated in this Division. Dismis-

sal would be appropriate, therefore, only if trial in this Division would create administrative or legal problems for this court that outweigh the convenience to plaintiff of having the matter tried here.

In this regard, defendant argues that various factors of public interest the Supreme Court enumerated in *Gulf Oil* militate in favor of dismissal. The court stated that cases generally should remain where they arise so that they will not crowd court dockets by being concentrated in certain locations, that juries generally should be spared having to hear cases that have "no relation" to their community, that cases "which touch the affairs of many persons" should be tried near them where possible, "rather than in remote parts of the country," and that diversity cases generally should be tried "in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." 330 U.S. at 508–09, 67 S.Ct. at 843.

The only one of these factors that appears of potential concern to this court is the difficulty of applying substantive law to this case. Virginia choice-of-law rules govern this tort suit. *Klaxon v. Stentor Electric Mfg. Co., Inc.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Thornhill v. Donnkenny, Inc.,* 823 F.2d 782 (4th Cir.1987). Under Virginia law, whether a tort occurred is determined by the law of the place where assertedly tortious events took place. *Mcmillan v. McMillan,* 219 Va. 1127, 1129–31, 253 S.E.2d 662, 663–65 (1979); *State of Maryland v. Coard,* 175 Va. 571, 580–81, 9 S.E. 2d 454, 458 (1940). Since the collision and the actions of the tour director at the heart of this suit occurred in Austria, Austrian law appears to govern, at least in part.

The other potential problems listed in *Gulf Oil* do not appear to arise in this case. The court doubts that cases of this nature will crowd its docket. The number of such actions will be limited so long as only residents of the Division seek to file suit here. At the same time, hearing this case should not oppress a local jury, since the plaintiff

claiming injury is a resident of the community. Nor is this a case that touches the affairs of relatively many persons. The court therefore concludes that the difficulty it will experience in applying Austrian law is the only factor enumerated by the Supreme Court in *Gulf Oil* that militates against dismissal.

The Supreme Court did not purport in *Gulf Oil* to provide an exhaustive list of administrative concerns that might justify a finding of *forum non conveniens.* In this case, defendant argues that Austria would be a more appropriate forum because various witnesses would be available there. It seems fair to assume that medical personnel who initially treated plaintiff are in Austria, as are law enforcement authorities who investigated the accident. As plaintiff points out, however, many of the witnesses to the accident were other passengers on the bus, and the record does not indicate where they might be. Since they were participants in defendant's tour, they can be expected to reside in countries where defendant does business, such as the United States and Britain. The record does indicate that two witnesses, the Carters, are in Roanoke. In addition, plaintiff was treated for her injuries in Britain as well as in Austria, and British medical personnel would not necessarily be any more available in Austria than in Virginia. Finally, the record does not make clear where the drivers of the bus and of the dump truck with which the bus collided are. In short, the record provides no basis for assurance that substantially more evidence would be available to a court in Austria than that which this court will be able to canvass.

The court finds that dismissal on grounds of *forum non conveniens* would not be appropriate.

For the reasons stated, the court denies defendant's motion to dismiss this action. The court invites the parties to request an expedited trial of this matter and will enter an appropriate order this day.