George CHEDID, Plaintiff,

v.

BOARDWALK REGENCY CORPORATION t/a Caesars Atlantic City Hotel and Casino, Defendant.

Civ. A. No. 90–1434–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 27, 1991.

Michael Miller, Jacobi & Miller, Alexandria, Va., for plaintiff.

George Harris Heilig, Jr., Heilig, McKenry, Fraim & Lollar, Norfolk, Va., for defendant.

MEMORANDUM OPINION

ELLIS, District Judge.

This is a diversity slip and fall negligence action. Presented here, by way of a threshold dismissal motion, is the question whether a plaintiff who slips and falls at a New Jersey gambling casino can sue the casino in Virginia on the basis of the casino's advertising and solicitation activities in Virginia. More specifically, the question is whether plaintiff's slip and fall cause of action is one "arising from" the casino's Virginia advertising and solicitation activities as required by Virginia's long-arm statute. *See* Virginia Code § 8.01–328.1. For

the reasons set forth here, the Court concludes that plaintiff's accident and injury did not arise from the casino's advertising and solicitation activities, and hence Virginia's long-arm statute does not reach the casino in this case. But the resulting absence of personal jurisdiction over the casino does not compel dismissal; following *Goldlawr Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), the Court considers whether transfer pursuant to 28 U.S.C. § 1404(a) is appropriate. On the basis of the existing record, the Court concludes that the interest of justice requires the transfer of this matter to the United States District Court for the District of New Jersey.

### Background

Plaintiff, a Virginia citizen, apparently enjoys visiting Atlantic City, New Jersey. He visited Caesars Hotel and Casino in Atlantic City at least once a month from early 1985 until the date of the accident in December 1988.

Defendant, Boardwalk Regency Corporation, is a New Jersey company that owns and operates the hotel and casino and trades as "Caesars Atlantic City Hotel and Casino." Defendant owns no property in Virginia, has no offices here and claims it transacts no business here. But it does advertise in Virginia, as it does in many states. For the four-month period from August through November 1990, defendant spent $3,500 on Virginia advertising. In addition to advertising, defendant pays a fee to Caesars World Marketing Corporation ("CWMC"), an affiliated entity,[1] to perform solicitation activities in Virginia on behalf of defendant's hotel and casino. These solicitation activities include telephone calls to potential customers in Virginia, as well as reimbursement of expenses incurred by customers in traveling to the casino. Plaintiff reports that he received several calls from CWMC's Virginia office encouraging him to patronize defendant's hotel and casino and offering to arrange for free transportation. He claims one of these calls induced him to make the December 1989 trip to defendant's hotel and casino and that he was reimbursed for the limousine travel involved. It was while he was on this jaunt that plaintiff slipped and fell in an elevator on the premises of defendant's hotel and casino. He claims defendant's employees negligently allowed the elevator floor to remain wet and slippery.

In response to the complaint, defendant filed a motion to dismiss or, in the alternative, for a transfer of venue. Two grounds were cited in the motion to dismiss: (1) lack of jurisdiction over defendant's person and (2) insufficiency of service of process. The former ground is the subject of this memorandum opinion, while the latter was denied by the Court as moot because plaintiff has since remedied the defect.[2]

### Analysis

Personal jurisdiction analysis is a two-step process. First, the court must determine whether the defendant's conduct is within the reach of the long-arm statute. The second step is a determination whether exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the Constitution. *See Haynes v. James H. Carr, Inc.,* 427 F.2d 700 (4th Cir.), *cert. denied,* 400 U.S. 942, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970); *Eastern Scientific Marketing v. Tekna–Seal, Inc.,* 696 F.Supp. 173 (E.D.Va.1988). In this in-

---

1. Defendant and CWMC are separate corporate entities that are, in a sense, siblings; they are subsidiaries of the same parent. Defendant is owned by Caesars New Jersey, Inc., which in turn is owned by Caesars World, Inc. The latter entity also owns CWMC.

2. Original service on defendant was effected by a private process server delivering process to defendant's registered agent in New Jersey. This was insufficient service of process. Rule 4(e), Fed.R.Civ.P., permits service of process on foreign corporations to be effected in a manner authorized by state law. Virginia Code § 8.01–301 governs service of process on foreign corporations. Personal service on a corporate or registered agent of a foreign corporation is effective where the agent is served within the Commonwealth. Otherwise, service on a foreign corporation requires either publication or service through the Secretary of the Commonwealth. Va.Code § 8.01–301(2)–(4).

stance, only the first inquiry is necessary, as analysis discloses that Virginia's long-arm statute does not reach or fit the facts at bar.

■ The pertinent portion of Virginia's long-arm statute provides as follows:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action *arising from* the person's:

(1) Transacting any business in this Commonwealth[.]

Virginia Code § 8.01–328.1(A) (emphasis added). Courts have made clear that a single act satisfies this provision, which should be construed to extend to the limits of the Due Process Clause. *See, e.g., Danville Plywood Corp. v. Plain and Fancy Kitchens, Inc.,* 218 Va. 533, 534–36, 238 S.E.2d 800, 802 (1977); *John G. Kolbe, Inc. v. Chromodern Chair Co.,* 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971); *Peanut Corp. of America v. Hollywood Brands, Inc.,* 696 F.2d 311 (4th Cir.1982). Citing these principles, plaintiff claims that defendant's advertising and solicitation activities constitute transacting business within the meaning of the long-arm statute. This claim is problematical; the record is unclear on how defendant obtains its Virginia advertising. Also unclear is whether agency principles operate to attribute CWMC's solicitation activities to defendant. At all events, the Court need not resolve these issues as it assumes, *arguendo,* that the advertising and solicitation activities occurred in Virginia, are attributable to defendant and suffice to satisfy the statutory business transaction requirement.

Given these assumptions, the question remains whether plaintiff's negligence cause of action is one "arising from" defendant's transaction of business in Virginia, namely defendant's advertising and solicitation activities in Virginia.

■ Resolving this question requires construing the phrase "arising from." Plain meaning is the starting point in the

analysis, and "caused by" is the phrase's plain meaning. Thus, it is evident that Virginia's General Assembly used the phrase "arising from" to require that there be a causal link between the acts relied on for personal jurisdiction and the cause of action asserted. Significantly, courts agree that this causation element requires more than simple "but-for" causation; it requires something akin to legal or proximate causation. *See, e.g., Pizarro v. Hoteles Concorde International C.A.,* 907 F.2d 1256, 1259 (1st Cir.1990). Measured by this standard, plaintiff's personal jurisdiction claim fails. Except for remote and inadequate "but-for" linkage, there is no causal relation whatever between the advertising and solicitation activities plaintiff relies on to establish personal jurisdiction and the alleged acts of negligence plaintiff relies on as the cause of his injury. Put another way, plaintiff's cause of action is one "arising from" the defendant's alleged negligence in leaving the elevator floor wet and slippery, not from defendant's wholly unrelated advertising and solicitation activities.

Sensibly settled authority supports this result. In *Pizarro v. Hoteles Concorde International, C.A.,* the First Circuit affirmed a dismissal for lack of personal jurisdiction on facts essentially similar to those at bar. There, plaintiffs, a married couple from Puerto Rico, sued a Venezuelan hotel for injuries the wife suffered when she was knocked down by a hotel employee who was running on the premises and skidded into her. Suit was brought in Puerto Rico and personal jurisdiction was claimed on the basis of the hotel's advertising activities there. On these facts, the First Circuit held that plaintiff's cause of action did not "arise out of or result from" the hotel's Puerto Rican business transactions, as required by Puerto Rico's long-arm statute. *See* 907 F.2d at 1258.[3] The First Circuit reached the same result on essentially similar facts in *Marino v. Hyatt Corp.,* 793 F.2d 427 (1st Cir.1986). There, the court determined that a negligent act

---

**3.** The Court also concluded that assertion of *in personam* jurisdiction under the circumstances there presented would violate the constitutional requirement of minimum contacts. *See* 907 F.2d at 1260.

at a hotel in Hawaii resulting in a guest's slip and fall did not "arise from" the guest's reservations made in Massachusetts. 793 F.2d at 430–31.

Nor is the First Circuit unique in reaching this result. The Eighth Circuit, in *Pearrow v. National Life & Acc. Ins. Co.*, 703 F.2d 1067 (8th Cir.1983), affirmed a dismissal for lack of personal jurisdiction, holding that plaintiff's slip and fall cause of action did not arise out of defendant's insurance sales and advertising activities in Arkansas for its tourist attraction in Tennessee, where the accident occurred. In the court's view, the connection between plaintiff's cause of action and defendant's sales and advertising activities was "too tenuous." 703 F.2d at 1069; *see also Wisselman v. Mount Snow, Ltd.*, 524 F.Supp. 78 (E.D.N.Y.1981) (no personal jurisdiction in New York over Vermont ski resort based on resort's New York advertising and solicitation).

While there is no Fourth Circuit or Virginia decision squarely in point, *City of Virginia Beach v. Roanoke River Basin Assoc.*, 776 F.2d 484 (4th Cir.1985) firmly supports the result reached here. The question there presented was whether a district court in Virginia had personal jurisdiction over the person of the governor of North Carolina. At issue was the validity of certain pipeline and water storage permits. Plaintiff claimed there was personal jurisdiction over the North Carolina governor by virtue of his participation in certain Army Corps of Engineers hearings conducted in Virginia. The Fourth Circuit rejected this claim, holding that there was a "lack of connection" between the validity of the permits and the governor's participation in the hearings; the former did not arise out of the latter. The reasoning and result in *Roanoke River Basin* point persuasively, if not conclusively, to the result reached here. There is a similar "lack of

connection" here between the advertising and solicitation activities and the plaintiff's negligence cause of action.[4]

■ Notwithstanding the absence of personal jurisdiction, the Court still has the power to transfer this matter under 28 U.S.C. § 1404(a). *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) (lack of jurisdiction and venue no bar to transfer under 28 U.S.C. § 1406(a) where interest of justice supports transfer); *Porter v. Groat*, 840 F.2d 255 (4th Cir.1988); *Roanoke River Basin*, 776 F.2d at 488–89 (indicating that transfer was preferable to dismissal of a party where personal jurisdiction was in doubt; court did not specify whether § 1406(a) or § 1404(a) would govern transfer). Given this, the Court next considers defendant's § 1404(a) motion.

The principles governing § 1404(a) motions are well-established. For a listing of these, see *Eastern Scientific Marketing v. Tekna–Seal, Inc.*, 696 F.Supp. at 180 n. 13.

■ The pertinent factors bearing on transfer are easily summarized. Favoring transfer are chiefly that (i) the accident occurred in New Jersey, (ii) the liability witnesses reside there, (iii) New Jersey law will apply, and unlike here, (iv) a New Jersey court would have personal jurisdiction over defendant. Weighing against transfer is that this is plaintiff's choice of forum and his home district, as well as where his medical witnesses are located. These factors, placed on the transfer scale, weigh decidedly in favor of transfer. Especially significant in this regard is the absence in this forum of personal jurisdiction over defendant. Thus, the alternative to transfer is dismissal. Comparing the two outcomes, transfer is arguably more consistent with the "interest of justice," since dismissal would likely lead to a costly

---

**4.** Plaintiff's citation to *Carter v. Trafalgar Tours, Ltd.*, 704 F.Supp. 673 (W.D.Va.1989) is unpersuasive. Contrary to the decisions discussed above, that case held personal jurisdiction to be proper over a foreign corporation that advertised its services in Virginia. *Carter*, however, focused chiefly on whether defendant's conduct met the transacting business requirement. The

opinion provides little reasoning or authority for its conclusory statement that the plaintiff's tort claim arose from the defendant's advertising in Virginia. *See* 704 F.Supp. at 676. Accordingly, the Court finds more persuasive the extensive analyses found in the decisions discussed above.

refiling in New Jersey. Transfer achieves the same result while saving the time and expense of refiling. Also significant in the transfer calculus is the fact that New Jersey law will govern liability and damage issues. It is true that plaintiff's choice of forum is entitled to substantial weight, especially where plaintiff chooses his home district. Yet this factor is not conclusive, particularly where, as here, there is no personal jurisdiction over the defendant in this forum and the only connection between this forum and the cause of action is that plaintiff and his physician witnesses reside here.[5]

While no cases directly on point have been cited by the parties, analogous cases support transfer. *See Nicol v. Koscinski*, 188 F.2d 537 (6th Cir.1951) (mandamus as to transfer order denied where personal injury action transferred from Michigan, where plaintiff resided, to Nebraska, where escalator accident occurred; court found persuasive that Nebraska law would govern, that the liability witnesses resided in Nebraska, and that plaintiff's medical witnesses in Michigan could be presented by deposition without seriously jeopardizing plaintiff's case); *Karrells v. Adolph Coors Company*, 699 F.Supp. 172 (N.D.Ill.1988) (personal injury action growing out of Indiana swimming pool accident was transferred from Illinois, plaintiff's home state, to Indiana; court found persuasive that Indiana law would govern, that case would be disposed of more speedily in Indiana, and that the potential defendant could be served in Indiana); *Bartolacci v. Presiding Bishop of the Church of Latter Day Saints*, 476 F.Supp. 381 (E.D.Pa.1979) (automobile accident case transferred from Pennsylvania, plaintiff's home state, to Maine where accident occurred; court found persuasive that Maine law would govern and that defendant could not implead a third-party in Pennsylvania); *A.C. Samford, Inc. v. United States*, 226

F.Supp. 72 (M.D.Ga.1963) (Georgia corporation's action for tort committed in South Carolina was transferred from Georgia to South Carolina where the only reason for retaining case in Georgia was that it would be less expensive and more convenient for plaintiff); *Morgan v. Illinois Central R.R.*, 161 F.Supp. 119 (S.D.Tex.1958) (personal injury action growing out of Illinois train derailment was transferred from plaintiff's home state of Texas to Illinois).

An appropriate order will issue.

---

5. The convenience of the witnesses is relatively evenly balanced in this case. Both parties list witnesses who reside in their proposed forum. Plaintiff lists several medical witnesses who reside in Virginia, and defendant lists several liability witnesses located in New Jersey. One of these groups will be inconvenienced no matter which forum is used. Were this the only factor, transfer would not be appropriate, for courts should not order transfer where it would merely shift the inconvenience from one party to another. *See Eastern Scientific Marketing*, 696 F.Supp. at 180.